SUBER v. CHANDLER.

1. A creditor held a sealed note, dated in 1863; in 1869, the debtor made a voluntary deed, to his wife and daughters, of a tract of land. In 1874, action was commenced on the note and judgment obtained in 1879, and a return of *nulla bona* had the same year; on the next day action was instituted to vacate the deed. *Held*, that this latter action was not barred by the statute of limitations.

2. The statute of limitations is inert and inoperative until a right of action arises.

3. A voluntary deed, as against an existing creditor of the grantor, is fraudulent, but no right of action exists in favor of such creditor to have the deed vacated, until he has exhausted his legal remedy by obtaining a return of *nulla bona* on his execution; until then, the statute of limitations does not begin to run in favor of the grantees as against the fraud.

4. This statute runs from the discovery of fraud, only where a right of action also then exists.

5. Delay in suing the note to judgment, short of the time allowed by the statute, does not start the currency of the statute in favor of such a deed.

6. In such cases the Court of Equity will refuse to lend its aid to enable a party to escape from the consequences of a fraudulent act by interposing the bar of the statute of limitations.

7. *McGowan* v. *Hitt*, 16 *S. C.* 602, overruled.

---

Before Pressley, J., Newberry, February, 1882.

Action by Ivy M. Suber against Dolly L. Chandler, Effa S. Chandler and Fannie T. Chandler. The opinion makes a full statement of the case.

*Messrs. George S. Mower, Jones & Jones,* for appellant.

*Messrs. Suber & Caldwell, M. A. Carlisle,* contra.

February 15th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In September, 1869, Thomas Chandler, now deceased, in consideration of natural love and affection, executed a conveyance to his wife and two daughters, the defendants, of a certain tract of land situate in Newberry county, containing two hundred and sixty acres, reserving a life-estate to himself. The deed was duly recorded September 11th, 1869. At the time of the execution of this deed, Chandler, the grantor, was indebted to appellant by sealed note, which bore date in 1863. In December, 1874, which was five years and three months after the execution and recording of the deed, the appellant brought action upon his note against Chandler, before the termination of which Chandler died, but the action was revived against his representatives, and judgment was obtained on February 13th, 1879, for $1,798.07.

In October, thereafter, the sheriff made return of *nulla bona* on the execution issued on this judgment, and on the next day, to wit, October 2d, 1879, the present action was commenced to set aside the deed to the defendants as fraudulent. The defendants, with other defenses not involved on this appeal, interposed the statute of limitations. The presiding judge, Judge Pressley, sustained the plea, and on that ground dismissed the complaint, with costs. The question before us is whether this ruling was error, and this is the only question in the case.

It is a general principle that the statute of limitations does not begin to run until the right of action accrues. This has been long since settled, and is well understood, as an established initial principle in connection with this statute. Mr. Angell says, " that the time is to be computed from the time at which the creditor is authorized to bring his suit. If the contract is to pay money at a future period, or upon the happening of a certain event, the statute, it is very clear, is inoperative until the specified period has elapsed, or the particular event has occurred, or,

if upon condition, not until the condition has been performed."
*Ang. Lim.*, ch. *XVI.*, p. 46. It is also well understood that
there are certain disabilities (savings in the statute) which pre-
vent its operation while they exist, one of these being absence
from the State of the defendant when the right of action accrues.
And it has been held in several cases in our State, that the stat-
ute is not set in motion against fraud until the fraud has been
discovered. *Eigleberger* v. *Kibler*, 1 *Hill Ch.* *113; *Farr* v.
*Farr, Id.* *387; *Means* v. *Feaster*, 4 *S. C.* 249.

All these follow as necessary sequences to the general princi-
ple upon which the statute of limitations rests, and which makes
it a statute of peace and repose, to wit, unnecessary delay in
attempting to enforce a right. Because, when no right of action
has accrued, or, if accrued, an insurmountable legal disability
stands in the way of asserting it, to permit a party to shield him-
self by interposing the statute, claiming the benefit of a delay
which by no possibility could have been avoided by the plaint-
iff, would be repugnant to every sense of justice and a reproach
to any system of law which claims to be the perfection of reason.

Now, the important questions in this case are, First, When did
the right of action accrue? Second, Was the plaintiff, at that time,
laboring under any legal disability, and, if so, when was this
disability removed? And, finally, was this action commenced
within a competent time thereafter? As to the first question, it
may be stated as a general proposition, that a right of action
accrues the moment a cause of action arises, and not before.
Sometimes it may be that this right cannot be exercised at the
moment of its accrual, because of some existing disability, appli-
cable either to the plaintiff or the defendant, but, nevertheless, it
may exist with its active energy suspended during the pendency
of the disability. But the right of action certainly can never
accrue before the cause of action arises.

The object and purpose of the present action was to set aside
a deed on the ground of fraud upon the appellant. The deed
was a voluntary conveyance by the appellant's debtor to the
defendants, of a tract of land which, at the date of the deed,
belonged to this debtor. It cannot be contended successfully
that a voluntary conveyance without consideration, a gift, is

necessarily fraudulent, although made by one in debt at the time. To give, it is said upon the highest authority, is praiseworthy; it not only blesses the receiver but the bestower, and there can be no higher enjoyment than the exercise of this right when properly indulged. Generous and benevolent liberality to the objects of one's love and affection, or to promote laudable and praiseworthy purposes, should not only be free from reproach, but be deserving of commendation.

There is, however, a still higher principle than this, a principle of justice, which demands that one shall be just before he is generous; and this principle, while not discouraging or condemning gifts, will not allow them to stand, if by so doing the just rights of others are defeated. Accordingly, in the harmonious application of these principles, it has been held by our courts, that while a voluntary conveyance of property is not of itself fraudulent even by one in debt, yet, if it was intended to hinder, delay and defeat present creditors, or shall ultimately have that effect, it will be held fraudulent and void.

If at the time of its execution the wrong was intended, the fraud is positive and active, and attaches to the act at that moment. If, however, no wrong was then intended, and the conveyance becomes injurious to creditors afterwards, because at some future time the grantor's property has failed to meet the just demands of the creditors, whose claims existed at the time of the deed, then a passive and legal fraud is developed, which, attaching to the deed, renders it void, not from the beginning, but at that moment. This must be so, because until it is legally ascertained that it requires the property embraced in the deed to respond to the demands of creditors, the rights of the grantee are unassailable. Even the deed of one absolutely insolvent would be good, if he should be so fortunate as to accumulate enough afterwards to meet the claims of creditors in time for their executions. Hence, it has been often held that a creditor, before attempting to assail the conveyance of his debtor, must not simply be apparently unable to secure payment otherwise, but must absolutely fail to do so after exhausting all legal effort to that end, by judicially establishing his debt and having a

21

return of *nulla bona* by the sheriff upon an execution issued thereon.

Now, in such case (which is the case here), the important questions are presented : What is the cause of action, and when does it arise? And, consequently, When does the currency of the statute begin ? A cause of action has been held in brief to be a legal right of the plaintiff invaded by the defendant, and it arises when the invasion takes place. Or, as stated by Mr. Angell : " Both in courts of equity as well as in courts of law,. a cause of action or suit arises when and as soon as the party has the right to apply to the proper tribunals for relief." Did the appellant have the right, at the date of the deed in contro-versy, to apply to the courts for relief with the view to have the proceeds of the property therein embraced applied to his debt? He certainly did not, because at that time his debt had not been judicially established, nor was he able to furnish the necessary evidence that his debt could not be paid without the aid of this property. Having no such right at that time, there was no inva-sion, as a right having no existence cannot be invaded.

All the elements of a cause of action at that time were want-ing, and no right of action accrued. So the currency of the statute did not then begin. But the appellant did afterwards reduce his note to judgment, and failed by his execution to find property other than this land to satisfy his debt. Then, and not till then, his right attached to seize this property and make it available, and then, and not till then, did the defendants invade this right by retaining possession and refusing to allow it to be sold. Up to that time their possession was legal and beyond the reach of attack, and it was only at that time that the appellant had the right to apply to the courts for relief, because his right of action had never accrued before.

If, then, the statute of limitations is inert and inoperative until the right of action accrues, as announced in the first gen-eral principle laid down in the beginning of this opinion, the time of computation here must begin on October 1st, 1879, the day on which the return of *nulla bona* was entered on appellant's execution. *Jones* v. *Read*, 1 *Humph.* 345 ; *Marr* v. *Rucker, Id.* 347. This action was commenced the next day, to wit, October

2d, 1879. This was certainly in time to satisfy the demands of any of the statutes, and it will be hardly necessary therefore to discuss the questions whether it required four, six or ten years to bar this action.

But even admitting that the plaintiff's right of action accrued at the date of the deed in 1869, and that the statute of force then requiring only four years is applicable, it cannot be contended that he could then have applied to any court either of law or equity for relief. His hands were completely tied. He was laboring under disabilities far greater than infancy, coverture or absence beyond the seas (the savings in the statute), for such persons have a right to commence their actions, notwithstanding their disabilities, and if commenced the courts will regard them, and grant proper relief. But had appellant commenced his action, it would have been dismissed on the ground that he had no cause of action. It would have been fatal on demurrer because it did not state facts sufficient to constitute a cause of action.

Can it be that, notwithstanding this, the statute was running against him because he was not asserting his right when the doors of all the courts were hermetically sealed in his face, and he was denied the privilege of appealing to them? This would be a stigma too great to be admitted, and a court of equity never ought to permit a defendant to shield himself under such a plea, when surrounded by such circumstances. To legitimate such an effort would be a wrong as great and as repulsive as the fraud which it protects. To prevent this, the court should seize upon the analogies arising from other cases, even though no authority directly in point can be found.

Upon what principle has it been decided that the statute does not commence to run until the discovery of the fraud in cases of active fraud, and that when the plaintiff avers in his complaint that the fraud was not discovered within the four or six years, it devolves upon the defendant to prove the contrary? It is upon the principle that the plaintiff could not have commenced action sooner. He had no knowledge of the wrong. Is not this precisely analogous to the case at bar? The appellant here had no knowledge that the deed to the defendants was in his

way until he found no other property available by the return of *nulla bona.* He had no cause of complaint, until he found it necessary to make that property available. Upon what principle has it been held, that if the debtor is absent from the State and beyond the reach of the court at the time the right of action accrues, the statute is suspended until he returns? It is because the plaintiff could not have sued sooner. So, too, the statute is suspended for nine months after the death of the debtor. And upon what principle is it that infants, *feme coverts* and parties beyond the seas have been saved in the statute itself? It is because they are not in condition to sue.

This principle, unless authority beyond question the other way can be found, ought to control in a case like this. It is claimed that these principles cannot apply in the face of the positive decision in this State that the statute commences at the discovery of the fraud. This doctrine is not denied, but it must be taken in connection with that other principle, also held in this State, that to give currency to the statute there must be a plaintiff who can sue and a defendant who can be sued. *Bugg* v. *Summer*, 1 *McM.* 333. The discovery of the fraud by a party who cannot sue on account of it, amounts to no discovery. There are cases where an action can be commenced the moment the fraud is discovered, and to such cases this doctrine is properly applicable, but in those cases where this discovery gives no right of action at the time, the reason of its application entirely fails.

It is conceded that this question has never been distinctly decided in this State, except in the recent case of *McGowan* v. *Hitt,* to which reference will be had subsequently. In the absence of controlling authority, it does seem that a court, in administering equity, should have some regard to the principles upon which the Court of Equity has always acted, and should decline, in a case like this, to give its aid to a party to escape from the consequences of a fraudulent act, by interposing the bar of the statute. These principles were well expressed in *McLure* v. *Ashby*, 7 *Rich. Eq.* 430, by Chancellor Johnstone, where he said: "In matters of an equitable nature, the statute not extending to them, this court is not imperatively bound to apply it, and only applies it by analogy to the practice at law, and that

it does not apply it where a sound conscience would be offended by its application." So, too, as was said by Chancellor Dargan, in the same case, in drawing a distinction as to the statute in courts of law and the Court of Equity : "They are not obligatory upon this court, and do not apply to proceedings in equity, except so far as the court has thought it conducive to the ends of justice to apply them in analogy to the rules which prevail in a court of law. And as the court only acts on this analogy because of its subserviency to the ends of justice, it withholds such action when it would be obviously subversive of equity."

The respondents, while impliedly admitting the correctness of the positions hereinabove, yet contend that in this case they should not apply, for the reason that appellant allowed five years and more to elapse after the execution of the deed which he now assails, before he attempted to put himself in place to attack it. The deed was executed in 1869, and defendant did not bring action upon his note until 1874. We do not see that this fact has any bearing upon the question involved. The appellant's note was under seal, and he had the right to indulge his debtor for five years, or more, if he saw proper, and why should he be punished for this? *non constat* that he knew or had any suspicion that Chandler would not be able to pay it, when demanded, or that the tract of land conveyed to the defendants would have to contribute to that end. There was no law which required that he should hasten proceedings in another and independent matter, in order to create a cause of action against the defendants, and we can see no reason why the five years between the deed and the action on the note, which the appellant, under the law, had a legal right to extend them, should now be converted into a limitation to another action, the right to which has not long since accrued, and which at that time he had no knowledge would ever accrue.

The judgment which we·propose to announce is directly in conflict with *McGowan* v. *Hitt*, 16 *S. C.* 602. That case was decided by a divided court, Mr. Justice McIver having dissented. It is a very recent decision. Judge Pressley, delivering the opinion of the majority, stated that in several of the States cases were found holding that the statute was suspended in cases

like that. See *Jones* v. *Read*, 1 *Humph.* 345 ; *Marr* v. *Rucker*, *Id.* 347, where the court expressly held that the statute did not begin to run until judgment by the creditor, and that some of the court had grave doubts on the question. Under these circumstances, and upon examination, finding that it has no sufficient support, either in principle or authority, in our opinion it should be overruled and it is so ordered.

It is the judgment of this court that the judgment of the Circuit Court be reversed.